# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 18-0479V
Filed: June 20, 2019
UNPUBLISHED

| | |
|---|---|
| DEBORAH ANN BURNAROOS,<br><br>                  Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                  Respondent. | Special Processing Unit (SPU); Findings of Fact; Onset; Tetanus Diphtheria acellular Pertussis (Tdap) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Jimmy A. Zgheib, Zgheib Sayad, P.C., White Plains, NY, for petitioner.*
*Darryl R. Wishard, U.S. Department of Justice, Washington, DC, for respondent.*

## FACT RULING[1]

**Dorsey**, Chief Special Master:

On April 2, 2018, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of a Tetanus Diphtheria acellular Pertussis ("Tdap") vaccine received on July 31, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] The undersigned intends to post this ruling on the United States Court of Federal Claims' website. **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished ruling contains a reasoned explanation for the action in this case, undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.

1

On February 22, 2019, respondent filed a Rule 4(c) report arguing that petitioner had not established entitlement to compensation (ECF No. 30). Respondent asserted that the record did not establish that petitioner suffered the onset of left arm pain within 48 hours, petitioner's pain was not limited to her left shoulder but also radiated from the neck into her hands and fingers, and that petitioner's imaging findings and clinical course were suggestive of degenerative joint disease rather than SIRVA. Specifically concerning onset, respondent argued:

> [P]etitioner's onset of left arm pain was not within 48 hours of vaccination. The contemporaneous medical records indicate that she did not report left arm pain or sensory symptoms until about one month after vaccination. She had medical treatment after the Tdap vaccination and before reporting her left arm pain, but the contemporaneous medical records indicate no reporting of left arm symptoms at this interim visit.

Respondent's Rule 4(c) report at 6-7.

In addition, respondent contended that petitioner had not presented sufficient evidence to prove causation in fact pursuant to *Althen v. Sec'y of Health and Human Servs.*, 418 F.3d 1274 (Fed. Cir. 2005). Petitioner requested a status conference to discuss the Rule 4 report. The status conference was held on March 20, 2019. Following the status conference, the undersigned issued a scheduling order permitting the parties to file additional evidence concerning onset by April 22, 2019. Scheduling Order issued March 22, 2019 (ECF No. 31). After that date, the undersigned stated that she intended to issue a fact ruling concerning onset. *Id.*

On April 4, 2019, petitioner filed Petitioner's Exhibits ("Pet. Ex.") 21 and 22, affidavits from Brett Gitchel and Karen Poe. No additional evidence was filed. The factual issue of when the onset of petitioner's left shoulder injury occurred is now ripe for a ruling. For the reasons discussed herein, the undersigned finds that the onset of petitioner's left shoulder injury occurred within 48 hours of her July 31, 2017 Tdap vaccination.

### I.     Medical Record and Affidavit Evidence

While the undersigned has reviewed the entire record, because this ruling concerns only onset, only evidence relevant to onset is summarized herein.

On July 31, 2017, petitioner presented to the emergency department at Kittitas Valley Healthcare ("KVH") reporting an insect bite. Pet. Ex. 3 at 41. During this visit, she received a Tdap vaccine in her left deltoid. *Id.* at 48. She was diagnosed with insect bite and given prescriptions for Keflex, an antibiotic, and Norco, an opioid analgesic. *Id.* at 48, 54.

In her affidavit, petitioner avers, "[a]s the Tdap vaccination was being administered, I felt severe pain as the needle was placed into my left arm." Pet. Ex. 4 at

¶ 5.  She stated that as the day progressed, her left arm and shoulder "felt as if I had been punched or stabbed and I began to feel tingling in my left fingers."  *Id*.  That evening, she had difficulty sleeping due to pain.  *Id*.  She stated that over the next few days, her left shoulder condition worsened and she began feeling "weakness, tingling and shooting pains in [her] left shoulder and numbness that radiated down my arm and into my fingers."  *Id*.

Petitioner's partner, Brett Gitchel, who lives with petitioner, avers that he took her to the emergency room on July 31, 2017 after she suffered an ankle injury thought to be from an insect or snake bite.  Pet. Ex. 21 at ¶ 4.  Mr. Gitchel states that while they were there, the nurse recommended a tetanus shot.  *Id*. at ¶ 5.  He explained that the administering nurse "smacked her [petitioner's] arm very hard then jabbed the vaccination in a rough manner into her left upper arm."  *Id*.  Mr. Gitchel noted that both he and petitioner thought the needle was large.  *Id*.

Mr. Gitchel explained that after the vaccination, petitioner's "upper arm was extremely red and became hot to the touch."  *Id*.  He stated that when they arrived home from the emergency room, petitioner "complained of worsening pain in her left shoulder and numbness in her left hand" and said it "felt like the tip of the needle broke off in her shoulder because of the way the nurse jabbed her with the vaccine."  *Id*. at ¶ 6.  Mr. Gitchel stated that when he examined petitioner's left upper arm, "it was red, tender, swollen, and hot to the touch."  *Id*.  The next morning, he recalled, petitioner's pain was much worse and she "had a big needle mark at the site of the injection."  *Id*. at ¶ 7.

In her affidavit, petitioner's mother, Karen Poe, who lives with petitioner, said that she saw petitioner when she returned home from the emergency room on July 31, 2017.  Pet. Ex. 22 at ¶ 5.  Ms. Poe indicated that petitioner told her "it felt like a jolt or a shock in her arm which continued to get worse even after she left" the hospital.  *Id*.  Ms. Poe stated that petitioner's shoulder "continued to get worse that evening" and the next day petitioner's "left shoulder was severely red and swollen and looked worse than the day before."  *Id*. at ¶¶ 5-6.

On August 10, 2017, petitioner reported to her primary care provider, physician assistant ("PA") Andrew Schock for a follow up to her July 31 emergency department visit. Pet. Ex. 7 at 9-11.  PA Schock noted that petitioner had "two purpuric round lesions left lower leg without erythema."  *Id*. at 9.  He found that her bites were "healing well" and that no further treatment was necessary.  *Id*.  Her medication list indicates that two medications were started on this date, triamcinolone acetonide and triamterene.  *Id*. at 10.  The record indicates that triamterene was for hypertension.  *Id*. at 9.  For triamcinolone, the record directs petitioner to apply the cream topically two times a day to the affected skin areas but does not indicate where those areas are.  *Id*. at 9-11.  Triamcinolone acetonide is applied topically as an anti-inflammatory.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY at 1959 (32nd ed. 2012).

In her affidavit, petitioner explained that she discussed the condition of her left shoulder at the August 10, 2017 visit. Pet. Ex. 4 at ¶ 6. She states that she "told him [PA Schock] that the Tdap vaccination was unusually painful and that [petitioner] continued to have pain and soreness" since the Tdap vaccination. Id. Petitioner avers, "Mr. Schock refused to examine my shoulder, and instead advised me that a tetanus shot could cause some pain which will eventually go away on its own." Id. Petitioner describes Mr. Schock as being "very rude and dismissive of my pain." Id.

Petitioner's partner, Brett Gitchel, avers that he took petitioner to the August 10, 2017 appointment. Pet. Ex. 21 at ¶ 8. He reports that the "majority of this office visit was in relation to her shoulder pain" and reports that the PA "tried lifting her arm up and that brought her to tears from the pain." Id. He further reported that the PA "prescribed a topical cream for her shoulder pain and inflammation." Id. As noted above, the medical record of that office visit indicates that on August 10, 2017, petitioner was started on "triamcinolone acetonide 0.1% topical cream," a topical anti-inflammatory, but does not indicate where it should be applied or what injury it was intended to treat. Pet. Ex. 7 at 9-11.

Petitioner explains that after the August 10 visit, she cancelled her second follow-up because her insect bite had resolved, and "Mr. Schock was unwilling to treat my left shoulder condition." Pet. Ex. 4 at ¶ 6. Petitioner's recollection that she cancelled her second follow-up appointment is supported by a telephone message documented in KVH Internal Medicine records. These records reflect that on August 21, 2017, petitioner called and cancelled an appointment scheduled for September 7, 2017 "and said that she will find a different provider elsewhere." Pet. Ex. 7 at 22.

Petitioner avers that her left shoulder "progressively worsened in the following days." Pet. Ex. 4 at ¶ 7. However, petitioner states that she "was limited in treatment options because I did not yet have a primary care doctor. I was waitlisted for primary care doctor . . . and I figured my treatment can wait until I am assigned a doctor. In the meantime, I rested my left shoulder/arm and modified my activities to avoid aggravating my condition." Id. at ¶ 8. She explained that she "realized that I needed immediate medical attention for my left shoulder/arm following an incident at work" where her left arm completely "gave out" while attempting to carry a gallon of bleach. Id. at ¶ 9. During this incident, she "had sudden pain and severe weakness, and I felt an electric shock which radiated from my left shoulder down to my fingers and caused me to drop the gallon of bleach." Id.

On August 30, 2017, 30 days after vaccination, petitioner returned to the KVH emergency department. Pet. Ex. 3 at 17. She reported left arm pain for one month. Id. at 22. She reported having a Tdap about a month ago and "[s]ince then, wakes up with pain at injection site, weakness, numbness with some shooting pain." Id. The time of onset was listed as one month, which read in context the undersigned interprets as meaning one month prior to this visit. Id. She was assessed with arm pain and numbness. Id. at 17.

4

On September 8, 2017, petitioner was seen by Dr. Birger of KVH Internal Medicine for "pain in L arm s/p [status post] tetanus shot." Pet. Ex. 7 at 6.  The record notes that petitioner had "L arm pain, from shoulder down back of arm to wrist." *Id*. at 8.  On examination her left shoulder was found to have "external range of motion somewhat limited." *Id*.  She reported that the Tdap shot "was *painful locally at the time but the next day she began having some numbness and pain* in her LEFT upper extremity which since that time has gotten worse." *Id*. at 5 (emphasis added).

On September 14, 2017, petitioner reported to Lakeview Spine Electrodiagnostic Report for an EMG and nerve conduction studies.  She reported "pain at her left shoulder and arm and numbness in the arm and fingers. She associates this with a tetanus shot she received on 7/30/17." *Id*. at 16.  The impression included "left bicep tendinitis, left subacromial bursitis, and myofascial pain in her left shoulder girdle with range of motion deficits at the left glenohumeral joint." *Id*.

On September 19, 2017, petitioner was seen by Dr. John Asriel.  Pet. Ex. 9 at 53.  In the review of systems, he noted "Joint Pain (shoulder)." Pet. Ex. 9 at 53.  On November 3, 2017, petitioner was seen by Dr. John Asriel for shoulder pain that had been occurring "for months." Pet. Ex. 9 at 36.  The record notes that she "relates [symptoms] to a tetanus shot in July" and that her left shoulder was painful "along deltoid insertion and AC area." *Id*.  Dr. Asriel assessed her with left shoulder pain and listed an onset date of July 2017. *Id*. at 37.

On November 15, 2017, petitioner had an initial physical therapy evaluation for her shoulder pain.  Pet. Ex. 10 at 6.  Under "Onset," the record states that she reported "primary complaints of L shoulder pain *since July 31st when she received a tetanus shot*.  Patient states she had numbness immediately in the hand that has not relieved since this occurred." *Id* (emphasis added).  The record lists the date of onset as July 31, 2017.  *Id*.

## II.   Legal Standard

Pursuant to Vaccine Act § 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act § 11(c)(1).  A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Vaccine Act § 13(b)(2).  "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Vaccine Act § 13(b)(1).  "Medical records, in general, warrant consideration as

5

trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Curcuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

### III.    Finding of Fact

To establish a Table SIRVA claim, a petitioner must establish, inter alia, that petitioner's pain occurred within 48 hours of vaccination. *See* Vaccine Injury Table; Qualifications and Aids to Interpretation, 42 C.F.R. § 100.3(c)(10). The parties dispute whether this criterion is met in this case.

In his Rule 4(c) report, respondent argues that petitioner "did not report left arm pain or sensory symptoms until about one month after vaccination." Rule 4(c) report at 7. Respondent adds that petitioner had medical treatment after the Tdap vaccination and before reporting her left arm pain but that the medical records do not indicate that she reported her left arm symptoms at this visit. *Id.* Respondent appears to refer to an August 10, 2017 follow-up visit for an insect bite, the records for which may be found in Pet. Ex. 7 at 9-11.

With respect to whether onset occurred within 48 hours, the undersigned notes that a delay in seeking care is not uncommon in SIRVA cases and is not dispositive. *See Cooper v. Sec'y of Health and Human Servs.*, No. 16-1387V, 2018 WL 1835179, at *6 (Fed. Cl. Spec. Mstr. Jan. 18, 2018) ("the undersigned does not find a delay in treatment of several months to be dispositive in and of itself regarding the question of onset in a SIRVA case such as this"); *see also Ray v. Sec'y of Health and Human Servs.*, No. 16-1388V, 2018 WL 7051571, at *6 (Fed. Cl. Spec. Mstr. Dec. 17, 2018) (*citing Cooper*). The Vaccine Act "does not mandate that the time of first onset be determined by the earliest entry" in the medical records. *Lopez v. Sec'y of Health & Human Servs.*, No. 90-12V, 1990 WL 293414 (Cl. Ct. Spec. Mstr. Dec. 10, 1990).

The medical record of the August 10 visit includes no mention of a shoulder injury. Respondent infers that because a shoulder injury is not mentioned in the medical record, no shoulder injury was discussed at this visit and, therefore, petitioner has not established that the onset of her shoulder pain occurred within 48 hours of her vaccination.

While the August 10 medical record does not mention petitioner's shoulder injury, that does not conclusively establish that the onset of petitioner's shoulder injury had not yet occurred at the time of this visit. Of note, the petitioner was given a topical anti-inflammatory medication during this visit, with no indication of where it should be applied or why it was prescribed.

Both petitioner and Mr. Gitchel report discussing petitioner's shoulder pain with PA Schock at the August 10 visit. In addition, Mr. Gitchel's recollection that PA Schock

6

prescribed a topical cream for the pain and inflammation is supported by the medical record indicating that petitioner was prescribed a topical anti-inflammatory. Pet. Ex. 7 at 9. While this cream could have been prescribed for her insect bites, the record noted that the bites were improving and that no further treatment was needed.

Moreover, when petitioner sought treatment for her arm/shoulder injury, she repeatedly and consistently reported experiencing pain since receiving the vaccine and related her symptoms to her vaccination. *See, e.g.*, Pet. Ex. 3 at 22 (reporting to emergency room on August 30, 2017 that she received a tetanus shot a month prior and since then wakes up with pain at the injection site, weakness, numbness, and some shooting pain); Pet. Ex. 7 at 5 (reporting to Dr. Birger that her Tdap shot was painful at the time of injection and the next day she had numbness and pain); Pet. Ex. 7 at 16 (electrodiagnostic report history noting that she had pain at her left shoulder and pain and numbness, which she associated with a tetanus shot received in July 2017); Pet. Ex. 9 at 37 (Dr. Asriel assessed petitioner with left shoulder pain and listed onset date of July 2017); Pet. Ex. 10 at 6 (reporting to physical therapist that she had left shoulder pain since July 31).

In *Tenneson v. Sec'y of Health & Human Servs.*, No. 16-1664V, 2018 WL 3083140 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), petitioner did not seek treatment for her SIRVA for nearly six months after vaccination. After vaccination and before seeking treatment for her shoulder, the petitioner in *Tenneson* made calls to her primary care provider and visited the emergency room for an unrelated condition. After a thorough review of the records, the undersigned in *Tenneson* found that this delay did not establish that the onset of pain was not within 48 hours of vaccination. The undersigned explained that the "fact that petitioner delayed seeking treatment for her shoulder symptoms does not negate the value of her treatment records or render this evidence not credible, although it may speak to the severity of her injury." *Id.* at *5. Respondent argued that the fact that petitioner's shoulder condition was not mentioned at these times meant that the shoulder pain began three to six months following vaccination. The undersigned rejected this argument.

Similarly, in this case the undersigned finds that the fact that the records of petitioner's August 10 visit do not mention her shoulder pain does not establish that the shoulder pain did not exist on that date. The undersigned finds petitioner's explanation concerning the August 10 visit, that the physician assistant advised that a tetanus shot could cause some pain that would go away on its own, to be credible. The undersigned has seen numerous SIRVA cases where petitioners are told by medical professionals that the pain will go away on its own.

In this case, the medical records document that petitioner sought medical care for her shoulder injury 30 days following the vaccination. The undersigned has found onset within 48 hours to be established in cases with longer delays in seeking medical care than this. In addition, petitioner offered a credible and reasonable explanation for why she did not receive care earlier. First, she states that she discussed her shoulder

7

pain at the August 10 appointment but that the physician assistant discounted her complaints. Second, she explained in her affidavit that she was on a waitlist for a primary care provider and attempted to manage without medical care by resting her left arm and modifying activities to avoid aggravating her shoulder. However, after an incident at work where she dropped a gallon of bleach, she decided that she could not wait for medical care for her shoulder any longer.

Additionally, the undersigned finds petitioner's affidavit explaining her symptoms and difficulties in obtaining medical care to be reasonable and credible. *See, e.g.*, *Stevens v. Sec'y of Health & Human Servs.*, 90-221V, 1990 WL 608693, at *3 (Cl. Ct. Spec. Mstr. 1990) (noting that clear, cogent, and consistent testimony can overcome missing or contradictory medical records). Petitioner's account is detailed and consistent with the medical records.

Based on the undersigned's review of the record as a whole, in particular the portions cited herein, the undersigned finds that that the fact that the medical record from petitioner's August 10, 2017 appointment does not mention her shoulder pain does not establish that the onset of her shoulder pain had not occurred before that date. After a review of all evidence, the undersigned finds that petitioner has established, by a preponderance of the evidence, that the onset of her shoulder pain occurred within 48 hours of her July 31, 2017 Tdap vaccination.

## IV. Conclusion

**In light of all of the above, and in view of the submitted evidence, including the medical records and credible affidavit testimony, the undersigned finds that the onset of petitioner's left shoulder pain was within 48 hours of her July 31, 2017 Tdap vaccination.**

A scheduling order has been issued directing petitioner to submit an expert report. Scheduling Order, issued June 20, 2019 (ECF No.33).

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Chief Special Master